**FILED**

**December 14, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 3:40 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| David Carpenter, | ) | Docket No.: 2017-08-0232 |
| Employee, | ) | Docket No.: 2017-08-0233 |
| v. | ) | |
| Southern Transit, P&M Logistics, and | ) | State File No.: 4008-2017 |
| Carter O'Neal Logistics, | ) | State File No.: 14688-2017 |
| Employer, | ) | |
| and | ) | |
| Protective Insurance Company and | ) | Judge Deana Seymour |
| Praetorian Insurance Company, | ) | |
| Insurance Carrier. | ) | |

---

## EXPEDITED HEARING ORDER

---

This case came before the undersigned Workers' Compensation Judge on November 15, 2017, on Mr. Carpenter's Request for Expedited Hearing. The central dispute is whether Southern Transit or P&M Logistics employed Mr. Carpenter on the date of injury. The purported employers also challenged whether Mr. Carpenter established entitlement to medical and temporary disability benefits. For the following reasons, the Court holds Mr. Carpenter is likely to prevail at a hearing on the merits in establishing that P&M Logistics owes him medical and temporary disability benefits. [1]

### History of Claim

Mr. Carpenter claimed he injured his back on December 8, 2016, when he fell to the ground while stepping out of his work truck. In the weeks leading up to December 8, he stated he could not adjust the truck's seat, so every bump jarred his back when he drove. He blamed the faulty seat for causing his back injury.

---

1 The Court entered an agreed order adding Carter O'Neal Logistics as a purported employee. The parties agreed that Carter's joinder related back to the Petition for Benefit Determination filed against P&M. P&M's counsel advised the Court that Carter and P&M were essentially the same entity, thus the Court will reference both companies as "P&M" in this order.

1

Mr. Carpenter allegedly reported his injury to his direct supervisor, Mike Mathias, but never received a panel of physicians or medical care.[2] He consulted his primary care physician, Dr. Acree, who took Mr. Carpenter off work from December 13 to December 15 and ordered an MRI that revealed severe L4-5 stenosis. Thereafter, Mr. Carpenter contacted Southern Transit's workers' compensation insurance carrier about his injury, and it provided him a panel of physicians from which he selected Dr. Sam Schroerlucke.

Mr. Carpenter saw Dr. Schroerlucke on January 10, 2017, and complained of back pain as well as pain and numbness in both legs. Mr. Carpenter said he injured his back while getting into a truck on December 8. After reviewing x-rays and Mr. Carpenter's prior MRI, Dr. Schroerlucke did not see an acute injury. He took Mr. Carpenter off work and ordered an epidural steroid injection.[3] However, Southern Transit's insurer refused to authorize the injection despite Dr. Schroerlucke's conclusion that Mr. Carpenter's symptoms were more likely than not related to his work injury. At his deposition, Dr. Schroerlucke testified that Mr. Carpenter's condition was "fifty-one percent or more related to his employment" despite the fact Mr. Carpenter allegedly suggested to another provider that he injured his back while riding a bike prior to December 8.

Mr. Carpenter testified he drove for Southern Transit for approximately two years and earned $750.00 per week to drive from Memphis, Tennessee, to Greenville, Mississippi.[4] He testified that Mr. Mathias hired and supervised him and that Mr. Mathias reported to Mr. Penchion.

Both Southern Transit and P&M denied Mr. Carpenter was their employee at the time of his injury. Ms. Harper denied hiring Mr. Carpenter. She testified that she never met Mr. Carpenter personally and only spoke to him twice by phone. She stated that Mr. Mathias, who was not her employee, hired and supervised Mr. Carpenter. Ms. Harper explained that Mr. Penchion loaned his dedicated FedEx Ground route from Memphis to Greenville to Southern Transit. Mr. Penchion managed the operations of the route – he kept drivers in the truck, took care of any issues with the truck, and paid for maintenance and fuel costs. Ms. Harper indicated she did not direct whom Mr. Penchion chose to drive the route, stating it had to be run because it was a "dedicated route." She admitted that Southern Transit paid Mr. Carpenter with checks every time he drove its truck. However, she testified that Mr. Penchion told her that SouthernTransit's truck was broken-down and Mr. Carpenter was sick on the date of injury.

---

[2] Mr. Mathias ultimately reported the claimed injury to Boris Penchion, P&M's owner, and Mr. Penchion told Southern Transit's owner, Macilyn Harper, about the workers' compensation claim.

[3] Dr. Schoerlucke kept Mr. Carpenter off work from January 10, 2017, to March 9, 2017.

[4] Mr. Carpenter's affidavit, however, named P&M as his employer.

2

Mr. Penchion admitted that Mr. Mathias worked for P&M as a driver manager but denied recruiting or hiring Mr. Carpenter for P&M.[5] Mr. Penchion testified he managed Southern Transit's operations but delegated the day to day business to Mr. Mathias. He stated that Ms. Harper could have stepped in if she disagreed with any of his decisions. Mr. Penchion further testified that the FedEx Ground system showed Mr. Carpenter assigned to Southern Transit. He asserted that, while FedEx Ground contracted with P&M to run the route, it knew Southern Transit actually ran the route. Mr. Penchion claimed he helped Ms. Harper earn steady income by lending her the dedicated Greenville route. He paid for the truck's fuel and maintenance and allowed her to keep all profits. Mr. Penchion also stated that Mr. Carpenter drove P&M's truck during the weeks leading up to the date of injury because Southern Transit's truck was inoperable. He testified that P&M paid Mr. Carpenter for the time he drove its truck because FedEx Ground paid P&M. However, Mr. Penchion testified that all profits from the run went to Ms. Harper, and P&M did not benefit from the run. He further testified that he needed a special driver for the Greenville route because that route did not bring in enough money for most drivers.

## Findings of Fact and Conclusions of Law

### Standard Applied

Mr. Carpenter bears the burden of proof on the essential elements of his claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). He does not have to prove every element of his claim by a preponderance of the evidence but must present sufficient evidence for the Court to determine he is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

### Employment Relationship

The Court begins its analysis by noting the term "employee" means "every person . . . in the service of an employer . . . under any contract of hire . . . written or implied." Tenn. Code Ann. § 50-6-102(12)(A) (2017). The parties did not introduce any written contract of employment into evidence. Thus, the Court considers whether there was an implied contract of employment.

Workers' Compensation Law requires "that there be an express or implied agreement for the alleged employer to remunerate the alleged employee for his services." *See Black v. Dance,* 643 S.W.2d 654, 657 (Tenn. 1982). Here, Mr. Carpenter drove P&M's truck, including on the date of injury, to run the dedicated truck route FedEx

---

[5] P&M also argued in its Pre-Hearing Statement that it would not be liable for benefits under the "loaned employee doctrine."

Ground contracted with P&M to run. Under the arrangement in place, FedEx Ground paid P&M for the run and P&M then paid all maintenance and expenses on the truck, including compensating Mr. Carpenter for driving the route. Mr. Mathias, driver-manager for P&M, hired Mr. Carpenter and supervised his work. Mr. Carpenter reported his work injury to Mr. Mathias.

On the other hand, Ms. Harper, testified that she did not hire Mr. Carpenter and had never met him. Mr. Carpenter reported directly to Mr. Mathias who worked for P&M. According to Ms. Harper, P&M hired Mr. Carpenter, took care of her truck, paid her fuel costs, and managed her operations. She confirmed that the Memphis-Greenville route was a dedicated route that had to be run.

In view of the above evidence, the Court finds that P&M employed Mr. Carpenter at the time of his injury. P&M owned the truck Mr. Carpenter was driving to run P&M's dedicated FedEx Ground route. P&M hired Mr. Carpenter through its driver manager, directed his work, and paid him to run its route.

Even if the Court had found Southern Transit to be Mr. Carpenter's employer, it rejects P&M's alternative argument that it is not responsible as a "special employer" per the "loaned employee doctrine." This doctrine provides that when a "general employer" lends an employee to a "special employer," the special employer is liable for workers' compensation benefits if "(a) the employee has a contract of hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work." *Winchester v. Seay*, 409 S.W.2d 378, 381 (Tenn. 1966). Based on the same facts used to find that P&M employed Mr. Carpenter at the time of his injury, it would be liable for benefits as a "special employer" under the loaned employee doctrine.

*Causation*

Having found that an employment relationship existed between Mr. Carpenter and P&M, the Court turns to the issue of causation. To be compensable, Mr. Carpenter must show his alleged injury arose primarily out of and in the course and scope of his employment. Tenn. Code Ann. § 50-6-102(14)(B) (2017). "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." *Id.* "The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14)(E).

Southern Transit provided Mr. Carpenter with a panel from which he chose Dr. Schroerlucke for treatment. At his deposition, Dr. Schroerlucke testified that Mr.

4

Carpenter's condition was "fifty-one percent or more related to his employment" despite information suggesting Mr. Carpenter injured his back while riding a bike. Thus, Mr. Carpenter has shown he is likely to prevail at a hearing on the merits on the issue of causation and is entitled to continued treatment with Dr. Schoerlucke.

*Temporary Disability Benefits*

To establish entitlement to temporary disability benefits, Mr. Carpenter must show (1) he was partially or totally disabled from working due to a compensable injury; (2) a causal connection between the injury and his inability to work; and (3) the duration of that period of disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015).

Mr. Carpenter showed that Dr. Acree took him off work from December 13 to December 15 and that Dr. Schroerlucke took him off work because of his compensable injury from January 10 to March 9, amounting to eight weeks and five days. P&M provided only two weeks of questionable wages from which the Court could not derive a reasonable average weekly wage. Therefore, the Court accepts the testimony of Mr. Carpenter, and along with its review of the wage information submitted, finds that Mr. Carpenter has an average weekly wage of $750.00 and a weekly compensation rate of $500.00. Therefore, he is entitled to temporary total disability benefits totaling $4,357.14.

**IT IS, THEREFORE, ORDERED** as follows:

1. P&M and/or its workers' compensation insurance carrier shall provide ongoing medical treatment pursuant to Tennessee Code Annotated Section 50-6-204 (2017).

2. P&M and/or its workers' compensation insurance carrier shall pay temporary total disability benefits for the period of December 13 to December 15, 2016, and from January 10to March 9, 2017. His compensation rate is $500.00, based on an average weekly rate of $750.00, which entitles him to benefits totaling $4,357.14.

3. This matter is set for a Scheduling Hearing **on January 29, 2018, at 10:00 a.m. Central Standard Time.** The parties must call (toll-free) 866-943-0014 to participate in the Hearing. Failure to call may result in a determination of the issues without the parties' participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to

5

WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED** this the day of December, 2017.

**JUDGE DEANA SEYMOUR**
**Court of Workers' Compensation Claims**

6

# APPENDIX

Exhibits:
1. Petitions for Benefit Determination (Collective)
2. Dispute Certification Notices (Collective)
3. Requests for Expedited Hearing and attached affidavits (Collective)
4. Transcript of the Deposition of Dr. Sam Schroerlucke
5. Mr. Carpenter's wage information from Southern Transit
6. Methodist Healthcare medical record for date of service November 7, 2016
7. Affidavit of David Carpenter
8. Mr. Carpenter's written statement dated January 16, 2017
9. Medical records from Methodist Healthcare, Healthcare Clinics, Methodist Medical Groups, and Tabor Orthopedics
10. Monthly Maintenance Record dated January 18, 2017

Technical record:
1. Petitions for Benefit Determination (Collective)
2. Dispute Certification Notices (Collective)
3. Southern Transit's Motion for Summary Judgment
4. Statement of Undisputed Facts
5. Southern Transit's Memorandum of Law in Support of its Motion for Summary Judgment
6. Requests for Expedited Hearing and attached affidavits (Collective)
7. Mr. Carpenter's Response to Southern Transit's Motion for Summary Judgment
8. Mr. Carpenter's Response to Southern Transit's Statement of Undisputed Facts
9. Notice of Hearing on Southern Transit's Motion for Summary Judgment
10. Mr. Carpenter's Pre-Hearing Brief
11. P&M Logistics and Praetorian Insurance Co.'s Witness & Exhibit List
12. P&M Logistics and Praetorian Insurance Co.'s Response to Southern Transit's Motion for Summary Judgment
13. P&M Logistics and Praetorian Insurance Co.'s Response to Southern Transit's Statement of Undisputed Facts
14. P&M Logistics and Praetorian Insurance Co.'s Pre-Hearing Statement
15. P&M Logistics and Praetorian Insurance Co.'s Motion in Limine to Exclude Any and All Witnesses and Exhibits Presented by Southern Transit
16. Southern Transit and Protective Insurance Co.'s Pre-Hearing Brief
17. Motion to Strike
18. Order on Motion for Consolidation
19. Southern Transit and Protective Insurance Co.'s Witness & Exhibit List
20. Second Notice of Hearing on Southern Transit's Motion for Summary Judgment
21. Agreed Order Adding Carter O'Neal Logistics as an Employer
22. Southern Transit and Protective Insurance Co.'s Supplemental Pre-Hearing Brief
23. Second Motion to Strike

24. Notice of Filing Mr. Carpenter's wage information from Southern Transit
25. Notice of Filing Transcript of October 18, 2017 proceedings
26. Notice of Filing Medical Records
27. P&M Logistics and Praetorian Insurance Co.'s Notice of Filing Wage Statement
28. Notice of Filing Affidavit of Boris Penchion
29. Mr. Carpenter's Motion for Consolidation
30. Mr. Carpenter's Motion to Add Party Defendant
31. Notice of Filing Deposition of Dr. Sam Schroerlucke

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the 14th day of December, 2017.

| Name | Certified Mail | Via Fax | Via Email | Email Address |
|------|----------------|---------|-----------|---------------|
| Monica Rejaei, Employee's Attorney | | | X | mrejaei@nstlaw.com |
| Allen Brown, Attorney for Southern Transit | | | X | allen@jallenbrownpllc.com |
| Michael Jones, Attorney for P&M Logistics and Carter O'Neil Logistics | | | X | mjones@wimberlylawson.com |

Penny Patterson-Shrum, Clerk
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

8